# EXHIBIT A

Law Division Motion Section Initial Case Management Dates for CALENDARS (A,B,C,D,E,F,H,R,X,Z) will be heard In Person.
All other Law Division Initial Case Management Dates will be heard via Zoom
For more information and Zoom Meeting IDs go to https://www.cookcountycourt.org/HOME?Zoom-Links?Agg4906_SelectTab/12
Court Date: No hearing information was found.

12-Person Jury

**Civil Action Cover Sheet - Case Initiation** **(12/01/20) CCL 0520**

FILED DATE: 3/23/2026 12:07 PM 2026L003341

FILED
3/23/2026 12:07 PM
Mariyana T. Spyropoulos
CIRCUIT CLERK
COOK COUNTY, IL
2026L003341
Calendar, J1
37230051

# IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

BRENDA MILLIGAN, Individually and as Personal Representative of the ESTATE OF ERNEST MILLIGAN

v.

ABB INC., individually and as successor in interest to BAILEY METER COMPANY, et al.

No. ______________________

### CIVIL ACTION COVER SHEET - CASE INITIATION

A Civil Action Cover Sheet - Case Initiation shall be filed with the complaint in all civil actions. The information contained herein is for administrative purposes only and cannot be introduced into evidence. Please check the box in front of the appropriate case type which best characterizes your action. Only one (1) case type may be checked with this cover sheet.

Jury Demand ☒ Yes ☐ No

(FILE STAMP)

**PERSONAL INJURY/WRONGFUL DEATH**

CASE TYPES:

- ☐ 027 Motor Vehicle
- ☐ 040 Medical Malpractice
- ☒ 047 Asbestos
- ☐ 048 Dram Shop
- ☐ 049 Product Liability
- ☐ 051 Construction Injuries (including Structural Work Act, Road Construction Injuries Act and negligence)
- ☐ 052 Railroad/FELA
- ☐ 053 Pediatric Lead Exposure
- ☐ 061 Other Personal Injury/Wrongful Death
- ☐ 063 Intentional Tort
- ☐ 064 Miscellaneous Statutory Action (Please Specify Below**)
- ☐ 065 Premises Liability
- ☐ 078 Fen-phen/Redux Litigation
- ☐ 199 Silicone Implant

**TAX & MISCELLANEOUS REMEDIES**

CASE TYPES:

- ☐ 007 Confessions of Judgment
- ☐ 008 Replevin
- ☐ 009 Tax
- ☐ 015 Condemnation
- ☐ 017 Detinue
- ☐ 029 Unemployment Compensation
- ☐ 031 Foreign Transcript
- ☐ 036 Administrative Review Action
- ☐ 085 Petition to Register Foreign Judgment
- ☐ 099 All Other Extraordinary Remedies

By: /s/ Melanie K. Impastato
(Attorney) (Pro Se)

**COMMERCIAL LITIGATION**

CASE TYPES:

- ☐ 002 Breach of Contract
- ☐ 070 Professional Malpractice (other than legal or medical)
- ☐ 071 Fraud (other than legal or medical)
- ☐ 072 Consumer Fraud
- ☐ 073 Breach of Warranty
- ☐ 074 Statutory Action (Please specify below.**)
- ☐ 075 Other Commercial Litigation (Please specify below.**)
- ☐ 076 Retaliatory Discharge

**OTHER ACTIONS**

CASE TYPES:

- ☐ 062 Property Damage
- ☐ 066 Legal Malpractice
- ☐ 077 Libel/Slander
- ☐ 079 Petition for Qualified Orders
- ☐ 084 Petition to Issue Subpoena
- ☐ 100 Petition for Discovery

** ______________________

Primary Email: melanie@vinsonlawoffice.com

Secondary Email: kaitlyn@vinsonlawoffice.com

Tertiary Email: hbellack@vinsonlawoffice.com

**Pro Se Only:** ☐ I have read and agree to the terms of the *Clerk's O ice Electronic Notice Policy* and choose to opt in to electronic notice form the **Clerk's Office** for this case at this email address: ______________________

**IRIS Y. MARTINEZ, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

FILED DATE: 3/23/2026 12:07 PM 2026L003341

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

| | |
|---|---|
| BRENDA MILLIGAN, Individually and as the Personal Representative of the ESTATE OF ERNEST MILLIGAN,<br><br>Plaintiffs,<br><br>v.<br><br>ABB INC., individually and as successor in interest to BAILEY METER COMPANY;<br>ABB MOTORS AND MECHANICAL, INC., f/k/a BALDOR ELECTRIC COMPANY;<br>AIR & LIQUID SYSTEMS CORPORATION, as successor by merger to BUFFALO PUMPS, INC.;<br>BACHMAN'S GARAGE INC.;<br>BP AMERICA INC., as successor to Standard Oil Company of Ohio d/b/a Boron;<br>BAYER CROPSCIENCE HOLDING, INC., individually and as successor in interest to AMCHEM PRODUCTS, INC. and BENJAMIN FOSTER COMPANY;<br>CLEAVER-BROOKS INC., f/k/a CLEAVER-BROOKS, a division of AQUA-CHEM INC.;<br>CROWN CORK & SEAL CO., INC., as successor-in-Interest to Mundet Cork;<br>EATON CORPORATION, individually and as successor in interest to CUTLER-HAMMER, INC.;<br>FLOWSERVE US, INC., as successor to ROCKWELL MANUFACTURING COMPANY, EDWARD VALVES, INC., NORDSTROM VALVES, INC. and SIER-BATH CO.;<br>FOSTER WHEELER ENERGY CORPORATION;<br>GENERAL DYNAMICS CORPORATION; | IN RE: ASBESTOS LITIGATION<br><br>Case No.:<br><br>Calendar:<br><br>PERSONAL INJURY<br>MESOTHELIOMA<br><br>JURY DEMAND |

FILED DATE: 3/23/2026 12:07 PM 2026L003341

GENERAL ELECTRIC COMPANY; )
GOULD ELECTRONICS INC., individually and as successor-in-interest to HOFFMAN VIDEO SYSTEMS, f/k/a NIKKO MATERIALS USA, INC. and f/k/a GOULD INC., successor-in-interest TO I-T-E IMPERIAL CORPORATION and I-T-E CIRCUIT BREAKER COMPANY, an Arizona corporation; )
GOULDS PUMPS LLC; )
GREENE, TWEED & CO., INC.; )
IMO INDUSTRIES, LLC f/k/a IMO INDUSTRIES, INC., as successor in interest to DELAVAL STEAM TURBINE CO.; )
JAMES WALKER MFG., CO.; )
LAKE UNION DRYDOCK COMPANY; )
METROPOLITAN LIFE INSURANCE COMPANY; )
MILWAUKEE VALVE COMPANY, LLC; )
MORSE TEC LLC, f/k/a BORGWARNER MORSE TEC LLC, and successor-by-merger to BORG-WARNER CORPORATION; )
OCCIDENTAL CHEMICAL CORPORATION, individually and as a successor-in-interest to Durez Corp.; )
PARAMOUNT GLOBAL, f/k/a VIACOMCBS INC., f/k/a CBS CORPORATION, a Delaware Corporation, f/k/a VIACOM, INC., successor by merger to CBS CORPORATION, a Pennsylvania Corporation, f/k/a WESTINGHOUSE ELECTRIC CORPORATION, Individually and as successor-in-interest to BF STURTEVANT CO.; )
PECW HOLDING COMPANY, f/k/a Plastics Engineering Company, a/k/a “PLENCO,” d/b/a “PLENCO,” f/k/a PLASTICS ENGINEERING COMPANY OF SHEBOYGAN; )

FILED DATE: 3/23/2026 12:07 PM 2026L003341

PRYSMIAN CABLES AND SYSTEMS USA, LLC, a/k/a BICCGENERAL, successor by merger with GENERAL CABLE INDUSTRIES, INC., f/k/a GENERAL CABLE CORP.; )
REDCO CORPORATION, f/k/a CRANE CO., individually and as successor in interest to DEMING PUMP CO., COCHRANE CORPORATION, CHAPMAN VALVE CO., SWARTWOUT CO., WEINMAN PUMP CO., and PACIFIC STEEL BOILER CORPORATION; )
ROCKBESTOS-SURPRENANT CABLE CORP.; )
ROCKWELL AUTOMATION, INC., as successor by merger to ALLEN-BRADLEY COMPANY, LLC, RELIANCE ELECTRIC CO., and ROSTONE CORPORATION, and its wholly owned subsidiary, NUAD Corporation (individually and as successor to Admiral Corporation), and as successor in interest to ROCKWELL SPRING & AXLE COMPANY’S TIMKEN SILENT AUTOMATIC DIVISION; )
SCHNEIDER ELECTRIC USA, INC., f/k/a SQUARE D COMPANY; )
STERLING WANDER LLLP f/k/a HONEYWELL INTERNATIONAL, INC., individually and as successor in interest to ALLIED SIGNAL, INC. / BENDIX CORP.; )
UNION CARBIDE CORPORATION; )
VIKING PUMP, INC.; )
WARREN PUMPS LLC; and )
WESTERN AUTO SUPPLY COMPANY; )

Defendants. )

**<u>PLAINTIFFS’ COMPLAINT</u>**

FILED DATE: 3/23/2026 12:07 PM 2026L003341

COMES NOW, Plaintiffs, BRENDA MILLIGAN, Individually and as the Personal Representative of the ESTATE OF ERNEST MILLIGAN, by and through undersigned counsel, and hereby file this lawsuit against the Defendants, and in support thereof, state as follows:

GENERAL ALLEGATIONS

1. This is an action for personal injuries that seeks damages in excess of thirty thousand dollars ($30,000.00) exclusive of attorney's fees or costs.

2. Ernest Milligan was an individual who was diagnosed with mesothelioma on March 12, 2025. He sadly passed away from mesothelioma on April 9, 2025.

3. BRENDA MILLIGAN is an individual who resides at 5686 25th Street Circle East, Bradenton, Florida 34203.

4. Ernest Milligan and BRENDA MILLIGAN were legally married on May 8, 2008, in Manatee County, Florida.

5. At all relevant times, Defendants were and are doing business within the State of Illinois and have established the necessary minimal contacts within the State of Illinois.

6. Defendants that manufactured, sold, or distributed raw asbestos materials or asbestos-containing products for use in Illinois and other states at times relevant to this action are referred to as "Product Defendants." Defendants that owned, managed, or controlled the premises where Ernest Milligan experienced occupational exposure from working with asbestos-containing products in his immediate vicinity are referred to as "Premises Defendants."

7. ABB INC., individually and as successor in interest to BAILEY METER COMPANY is a Delaware corporation with its principal place of business in Cary, North Carolina. At all times material, ABB INC. manufactured, sold, or distributed raw asbestos materials or

FILED DATE: 3/23/2026 12:07 PM 2026L003341

asbestos-containing products, including but not limited to valves and electrical equipment. Plaintiffs' claims against ABB INC. arise out of its business activities in the State of Illinois. ABB INC. is sued as a Product Defendant.

8. ABB MOTORS AND MECHANICAL, INC., f/k/a BALDOR ELECTRIC COMPANY is a Missouri corporation with its principal place of business in Fort Smith, Arkansas. At all times material, ABB MOTORS AND MECHANICAL, INC. manufactured, sold, or distributed raw asbestos materials or asbestos-containing products, including but not limited to motors. Plaintiffs' claims against ABB MOTORS AND MECHANICAL, INC. arise out of its business activities in the State of Illinois. ABB MOTORS AND MECHANICAL, INC. is sued as a Product Defendant.

9. AIR & LIQUID SYSTEMS CORPORATION, as successor by merger to BUFFALO PUMPS, INC. is a New York corporation with its principal place of business in Carnegie, Pennsylvania. At all times material, AIR & LIQUID SYSTEMS CORPORATION manufactured, sold, or distributed raw asbestos materials or asbestos-containing products, including but not limited to pumps. Plaintiffs' claims against AIR & LIQUID SYSTEMS CORPORATION arise out of its business activities in the State of Illinois. AIR & LIQUID SYSTEMS CORPORATION is sued as a Product Defendant.

10. BACHMAN'S GARAGE INC. is a Pennsylvania corporation with its principal place of business in New Brighton, Pennsylvania. At all times material, BACHMAN'S GARAGE INC. owned, managed, or controlled the premises where Ernest Milligan worked and knew or should have known that asbestos-containing products, including but not limited to engines, brakes, clutches, and gaskets, were used on its premises, and that employees, including Ernest Milligan, would be exposed to asbestos fibers as a result. Plaintiffs'

FILED DATE: 3/23/2026 12:07 PM 2026L003341

claims against BACHMAN'S GARAGE INC. arise out of its business activities in the State of Illinois. BACHMAN'S GARAGE INC. is sued as a Premises Defendant.

11. BP AMERICA INC., as successor to Standard Oil Company of Ohio d/b/a Boron, is a Delaware corporation with its principal place of business in Houston, Texas. At all times material, BP AMERICA INC. owned, managed, or controlled the premises where Ernest Milligan worked and knew or should have known that asbestos-containing products, including but not limited to engines, brakes, clutches, and gaskets, were used on its premises, and that employees, including Ernest Milligan, would be exposed to asbestos fibers as a result. Plaintiffs' claims against BP AMERICA INC. arise out of its business activities in the State of Illinois. BP AMERICA INC. is sued as a Premises Defendant.

12. BAYER CROPSCIENCE HOLDING, INC., individually and as successor in interest to AMCHEM PRODUCTS, INC. and BENJAMIN FOSTER COMPANY is a Delaware corporation with its principal place of business in St. Louis, Missouri. At all times material, BAYER CROPSCIENCE HOLDING, INC. manufactured, sold, or distributed raw asbestos materials or asbestos-containing products, including but not limited to adhesive cement and paint. Plaintiffs' claims against BAYER CROPSCIENCE HOLDING, INC. arise out of its business activities in the State of Illinois. BAYER CROPSCIENCE HOLDING, INC. is sued as a Product Defendant.

13. CLEAVER-BROOKS INC., f/k/a CLEAVER-BROOKS, a division of AQUA-CHEM INC. is a Delaware corporation with its principal place of business in Thomasville, Georgia. At all times material, CLEAVER-BROOKS INC. manufactured, sold, or distributed raw asbestos materials or asbestos-containing products, including but not limited to boilers. Plaintiffs' claims against CLEAVER-BROOKS INC. arise out of its

FILED DATE: 3/23/2026 12:07 PM 2026L003341

business activities in the State of Illinois. CLEAVER-BROOKS INC. is sued as a Product Defendant.

14. CROWN CORK & SEAL CO., INC., as successor-in-Interest to Mundet Cork is a Pennsylvania corporation with its principal place of business in Philadelphia, Pennsylvania. At all times material, CROWN CORK & SEAL CO., INC. manufactured, sold, or distributed raw asbestos materials or asbestos-containing products, including but not limited to insulation. Plaintiffs' claims against CROWN CORK & SEAL CO., INC. arise out of its business activities in the State of Illinois. CROWN CORK & SEAL CO., INC. is sued as a Product Defendant.

15. EATON CORPORATION, individually and as successor in interest to CUTLER-HAMMER, INC. is an Ohio corporation with its principal place of business in Beachwood, Ohio. At all times material, EATON CORPORATION manufactured, sold, or distributed raw asbestos materials or asbestos-containing products, including but not limited to electrical equipment. Plaintiffs' claims against EATON CORPORATION arise out of its business activities in the State of Illinois. EATON CORPORATION is sued as a Product Defendant.

16. FLOWSERVE US, INC., as successor to ROCKWELL MANUFACTURING COMPANY, EDWARD VALVES, INC., NORDSTROM VALVES, INC. and SIER-BATH CO. is a New York corporation with its principal place of business in Irving, Texas. At all times material, FLOWSERVE US, INC. manufactured, sold, or distributed raw asbestos materials or asbestos-containing products, including but not limited to valves. Plaintiffs' claims against FLOWSERVE US, INC. arise out of its business activities in the State of Illinois. FLOWSERVE US, INC. is sued as a Product Defendant.

FILED DATE: 3/23/2026 12:07 PM 2026L003341

17. FOSTER WHEELER ENERGY CORPORATION is a Delaware corporation with its principal place of business in Clinton, New Jersey. At all times material, FOSTER WHEELER ENERGY CORPORATION manufactured, sold, or distributed raw asbestos materials or asbestos-containing products, including but not limited to generators. Plaintiffs' claims against FOSTER WHEELER ENERGY CORPORATION arise out of its business activities in the State of Illinois. FOSTER WHEELER ENERGY CORPORATION is sued as a Product Defendant.

18. GENERAL DYNAMICS CORPORATION is a Virginia corporation with its principal place of business in Reston, Virginia. At all times material, GENERAL DYNAMICS CORPORATION manufactured, sold, or distributed raw asbestos materials or asbestos-containing products, including but not limited to motors, winches, and electrical equipment. Plaintiffs' claims against GENERAL DYNAMICS CORPORATION arise out of its business activities in the State of Illinois. GENERAL DYNAMICS CORPORATION is sued as a Product Defendant.

19. GENERAL ELECTRIC COMPANY is a New York corporation with its principal place of business in Boston, Massachusetts. At all times material, GENERAL ELECTRIC COMPANY manufactured, sold, or distributed raw asbestos materials or asbestos-containing products, including but not limited to motors, phenolics, and electrical equipment. Plaintiffs' claims against GENERAL ELECTRIC COMPANY arise out of its business activities in the State of Illinois. GENERAL ELECTRIC COMPANY is sued as a Product Defendant.

20. GOULD ELECTRONICS INC., individually and as successor-in-interest to HOFFMAN VIDEO SYSTEMS, f/k/a NIKKO MATERIALS USA, INC. and f/k/a GOULD INC.,

FILED DATE: 3/23/2026 12:07 PM 2026L003341

successor-in-interest TO I-T-E IMPERIAL CORPORATION and I-T-E CIRCUIT BREAKER COMPANY is an Arizona corporation with its principal place of business in Chandler, Arizona. At all times material, GOULD ELECTRONICS INC. manufactured, sold, or distributed raw asbestos materials or asbestos-containing products, including but not limited to electrical equipment. Plaintiffs' claims against GOULD ELECTRONICS INC. arise out of its business activities in the State of Illinois. GOULD ELECTRONICS INC. is sued as a Product Defendant.

21. GOULDS PUMPS LLC is a Delaware limited liability company with its principal place of business in Seneca Falls, New York. At all times material, GOULDS PUMPS LLC manufactured, sold, or distributed raw asbestos materials or asbestos-containing products, including but not limited to pumps. Plaintiffs' claims against GOULDS PUMPS LLC arise out of its business activities in the State of Illinois. GOULDS PUMPS LLC is sued as a Product Defendant.

22. GREENE, TWEED & CO., INC. is a Delaware corporation with its principal place of business in Kulpsville, Pennsylvania. At all times material, GREENE, TWEED & CO., INC. manufactured, sold, or distributed raw asbestos materials or asbestos-containing products, including but not limited to gaskets and packing. Plaintiffs' claims against GREENE, TWEED & CO., INC. arise out of its business activities in the State of Illinois. GREENE, TWEED & CO., INC. is sued as a Product Defendant.

23. IMO INDUSTRIES, LLC f/k/a IMO INDUSTRIES, INC., as successor in interest to DELAVAL STEAM TURBINE CO. is a Delaware limited liability company with its principal place of business in North Bethesda, Maryland. At all times material, IMO INDUSTRIES, LLC manufactured, sold, or distributed raw asbestos materials or asbestos-

FILED DATE: 3/23/2026 12:07 PM 2026L003341

containing products, including but not limited to pumps and turbines. Plaintiffs' claims against IMO INDUSTRIES, LLC arise out of its business activities in the State of Illinois. IMO INDUSTRIES, LLC is sued as a Product Defendant.

24. JAMES WALKER MFG., CO. is an Illinois corporation with its principal place of business in Glenwood, Illinois. At all times material, JAMES WALKER MFG., CO. manufactured, sold, or distributed raw asbestos materials or asbestos-containing products, including but not limited to gaskets and packing. Plaintiffs' claims against JAMES WALKER MFG., CO. arise out of its business activities in the State of Illinois. JAMES WALKER MFG., CO. is sued as a Product Defendant.

25. LAKE UNION DRYDOCK COMPANY is a Washington corporation with its principal place of business in Seattle, Washington. At all times material, LAKE UNION DRYDOCK COMPANY owned, managed, or controlled the premises where Ernest Milligan worked and knew or should have known that asbestos-containing products, materials, or equipment, including but not limited to pumps, valves, packing, gaskets, insulation, boilers, motors, wires, cables, panels, and breakers were used on its premises, and that employees, including Ernest Milligan, were exposed to asbestos fibers as a result. Plaintiffs' claims against LAKE UNION DRYDOCK COMPANY arise out of its business activities in the State of Illinois. LAKE UNION DRYDOCK COMPANY is sued as a Premises Defendant.

26. METROPOLITAN LIFE INSURANCE COMPANY is a New York corporation with its principal place of business in New York, New York. Plaintiffs' claims against METROPOLITAN LIFE INSURANCE COMPANY arise out of its business activities in the State of Illinois. METROPOLITAN LIFE INSURANCE COMPANY is sued as a Conspiracy Defendant.

FILED DATE: 3/23/2026 12:07 PM 2026L003341

27. MILWAUKEE VALVE COMPANY, LLC is a Wisconsin limited liability company with its principal place of business in New Berlin, Wisconsin. At all times material, MILWAUKEE VALVE COMPANY, LLC manufactured, sold, or distributed raw asbestos materials or asbestos-containing products, including but not limited to valves. Plaintiffs' claims against MILWAUKEE VALVE COMPANY, LLC arise out of its business activities in the State of Illinois. MILWAUKEE VALVE COMPANY, LLC is sued as a Product Defendant.

28. MORSE TEC LLC, f/k/a BORGWARNER MORSE TEC LLC, and successor-by-merger to BORG-WARNER CORPORATION is a Delaware limited liability company with its principal place of business in Ithaca, New York. At all times material, MORSE TEC LLC manufactured, sold, or distributed raw asbestos materials or asbestos-containing products, including but not limited to clutches. Plaintiffs' claims against MORSE TEC LLC arise out of its business activities in the State of Illinois. MORSE TEC LLC is sued as a Product Defendant.

29. OCCIDENTAL CHEMICAL CORPORATION, individually and as a successor-in-interest to Durez Corp. is a New York corporation with its principal place of business in Dallas, Texas. At all times material, OCCIDENTAL CHEMICAL CORPORATION manufactured, sold, or distributed raw asbestos materials or asbestos-containing products, including but not limited to phenolics and electrical equipment. Plaintiffs' claims against OCCIDENTAL CHEMICAL CORPORATION arise out of its business activities in the State of Illinois. OCCIDENTAL CHEMICAL CORPORATION is sued as a Product Defendant.

30. PARAMOUNT GLOBAL, f/k/a VIACOMCBS INC., f/k/a CBS CORPORATION, a Delaware Corporation, f/k/a VIACOM, INC., successor by merger to CBS

FILED DATE: 3/23/2026 12:07 PM 2026L003341

CORPORATION, a Pennsylvania Corporation, f/k/a WESTINGHOUSE ELECTRIC CORPORATION, Individually and as successor-in-interest to BF STURTEVANT CO. is a Delaware corporation with its principal place of business in New York, New York. At all times material, PARAMOUNT GLOBAL manufactured, sold, or distributed raw asbestos materials or asbestos-containing products, including but not limited to forced draft blowers, motors, generators, phenolics, and electrical equipment. At all times material, PARAMOUNT GLOBAL owned, managed, or controlled the premises where Ernest Milligan worked and knew or should have known that asbestos-containing products, including but not limited to motors, wires, cables, panels, and breakers, were used on its premises, and that employees, including Ernest Milligan, would be exposed to asbestos fibers as a result. Plaintiffs' claims against PARAMOUNT GLOBAL arise out of its business activities in the State of Illinois. PARAMOUNT GLOBAL is sued as a Product Defendant and Premises Defendant.

31. PECW HOLDING COMPANY, f/k/a Plastics Engineering Company, a/k/a "PLENCO," d/b/a "PLENCO," f/k/a PLASTICS ENGINEERING COMPANY OF SHEBOYGAN, is a Wisconsin corporation with its principal place of business in Sheboygan, Wisconsin. At all times material, PECW HOLDING COMPANY manufactured, sold, or distributed raw asbestos materials or asbestos-containing products, including but not limited to phenolics and electrical equipment. Plaintiffs' claims against PECW HOLDING COMPANY arise out of its business activities in the State of Illinois. PECW HOLDING COMPANY is sued as a Product Defendant.

32. PRYSMIAN CABLES AND SYSTEMS USA, LLC, a/k/a BICCGENERAL, successor by merger with GENERAL CABLE INDUSTRIES, INC., f/k/a GENERAL CABLE CORP.

FILED DATE: 3/23/2026 12:07 PM 2026L003341

is a Delaware corporation with its principal place of business in Highland Heights, Kentucky. At all times material, PRYSMIAN CABLES AND SYSTEMS USA, LLC manufactured, sold, or distributed raw asbestos materials or asbestos-containing products, including but not limited to cable and electrical equipment. Plaintiffs' claims against PRYSMIAN CABLES AND SYSTEMS USA, LLC arise out of its business activities in the State of Illinois. PRYSMIAN CABLES AND SYSTEMS USA, LLC is sued as a Product Defendant.

33. REDCO CORPORATION, f/k/a CRANE CO., individually and as successor in interest to DEMING PUMP CO., COCHRANE CORPORATION, CHAPMAN VALVE CO., SWARTWOUT CO., WEINMAN PUMP CO., and PACIFIC STEEL BOILER CORPORATION is a Delaware corporation with its principal place of business in Stamford, Connecticut. At all times material, REDCO CORPORATION manufactured, sold, or distributed raw asbestos materials or asbestos-containing products, including but not limited to pumps, valves, and gaskets. Plaintiffs' claims against REDCO CORPORATION arise out of its business activities in the State of Illinois. REDCO CORPORATION is sued as a Product Defendant.

34. ROCKBESTOS-SURPRENANT CABLE CORP. is a Connecticut corporation with its principal place of business in East Granby, Connecticut. At all times material, ROCKBESTOS-SURPRENANT CABLE CORP. manufactured, sold, or distributed raw asbestos materials or asbestos-containing products, including but not limited to cable and electrical equipment. Plaintiffs' claims against ROCKBESTOS-SURPRENANT CABLE CORP. arise out of its business activities in the State of Illinois. ROCKBESTOS-SURPRENANT CABLE CORP. is sued as a Product Defendant.

FILED DATE: 3/23/2026 12:07 PM 2026L003341

35. ROCKWELL AUTOMATION, INC., as successor by merger to ALLEN-BRADLEY COMPANY, LLC, RELIANCE ELECTRIC CO., and ROSTONE CORPORATION, and its wholly owned subsidiary, NUAD Corporation (individually and as successor to Admiral Corporation), and as successor in interest to ROCKWELL SPRING & AXLE COMPANY'S TIMKEN SILENT AUTOMATIC DIVISION is a Delaware corporation with its principal place of business in Milwaukee, Wisconsin. At all times material, ROCKWELL AUTOMATION, INC. manufactured, sold, or distributed raw asbestos materials or asbestos-containing products, including but not limited to phenolics and electrical equipment. Plaintiffs' claims against ROCKWELL AUTOMATION, INC. arise out of its business activities in the State of Illinois. ROCKWELL AUTOMATION, INC. is sued as a Product Defendant.

36. SCHNEIDER ELECTRIC USA, INC., f/k/a SQUARE D COMPANY is a Delaware corporation with its principal place of business in Andover, Massachusetts. At all times material, SCHNEIDER ELECTRIC USA, INC. manufactured, sold, or distributed raw asbestos materials or asbestos-containing products, including but not limited to electrical equipment. Plaintiffs' claims against SCHNEIDER ELECTRIC USA, INC. arise out of its business activities in the State of Illinois. SCHNEIDER ELECTRIC USA, INC. is sued as a Product Defendant.

37. STERLING WANDER LLLP f/k/a HONEYWELL INTERNATIONAL, INC., individually and as successor in interest to ALLIED SIGNAL, INC. / BENDIX CORP. is a Delaware corporation with its principal place of business in Charlotte, North Carolina. At all times material, STERLING WANDER LLLP manufactured, sold, or distributed raw asbestos materials or asbestos-containing products, including but not limited to brakes.

FILED DATE: 3/23/2026 12:07 PM 2026L003341

Plaintiffs' claims against STERLING WANDER LLLP arise out of its business activities in the State of Illinois. STERLING WANDER LLLP is sued as a Product Defendant.

38. UNION CARBIDE CORPORATION is a New York corporation with its principal place of business in Seadrift, Texas. At all times material, UNION CARBIDE CORPORATION manufactured, sold, or distributed raw asbestos materials or asbestos-containing products, including but not limited to phenolics and electrical equipment. Plaintiffs' claims against UNION CARBIDE CORPORATION arise out of its business activities in the State of Illinois. UNION CARBIDE CORPORATION is sued as a Product Defendant.

39. VIKING PUMP, INC. is a Delaware corporation with its principal place of business in Cedar Falls, Iowa. At all times material, VIKING PUMP, INC. manufactured, sold, or distributed raw asbestos materials or asbestos-containing products, including but not limited to pumps. Plaintiffs' claims against VIKING PUMP, INC. arise out of its business activities in the State of Illinois. VIKING PUMP, INC. is sued as a Product Defendant.

40. WARREN PUMPS LLC is a Delaware limited liability company with its principal place of business in Warren, Massachusetts. At all times material, WARREN PUMPS LLC manufactured, sold, or distributed raw asbestos materials or asbestos-containing products, including but not limited to pumps. Plaintiffs' claims against WARREN PUMPS LLC arise out of its business activities in the State of Illinois. WARREN PUMPS LLC is sued as a Product Defendant.

41. WESTERN AUTO SUPPLY COMPANY is a Delaware corporation with its principal place of business in Roanoke, Virginia. At all times material, WESTERN AUTO SUPPLY COMPANY manufactured, sold, or distributed raw asbestos materials or asbestos-containing products, including but not limited to brakes. Plaintiffs' claims against

FILED DATE: 3/23/2026 12:07 PM 2026L003341

WESTERN AUTO SUPPLY COMPANY arise out of its business activities in the State of Illinois. WESTERN AUTO SUPPLY COMPANY is sued as a Product Defendant.

ERNEST MILLIGAN'S EXPOSURE TO ASBESTOS

42. Ernest Milligan served in the United States Navy as an Electrician's Mate from April 1960 to April 1964.

43. From September 1960 to November 1960, Ernest Milligan attended Electrician's Mate "A" School in Great Lakes, Illinois, where he was exposed to asbestos-containing products manufactured, sold, or distributed by the Product Defendants, including pumps, valves, packing, gaskets, insulation, boilers, motors, wires, cables, panels, and breakers.

44. From November 1960 to April 1964, Ernest Milligan served aboard the USS *Burton Island* (AGB-1), where he was exposed to asbestos-containing products manufactured, sold, or distributed by the Product Defendants, including pumps, valves, packing, gaskets, insulation, boilers, motors, wires, cables, panels, and breakers.

45. From approximately April 1964 to December 1964, Ernest Milligan worked as an Electrician for Salmon Bay Electric Co. in Seattle, Washington, where he was exposed to asbestos-containing products manufactured, sold, or distributed by the Product Defendants, including pumps, valves, packing, gaskets, insulation, boilers, motors, wires, cables, panels, and breakers.

46. From approximately January 1965 to July 1966, Ernest Milligan worked as an Electrician for Lockheed Shipbuilding Company in Seattle, Washington, where he was exposed to asbestos-containing products manufactured, sold, or distributed by the Product Defendants, including pumps, valves, packing, gaskets, insulation, boilers, motors, wires, cables, panels, and breakers.

FILED DATE: 3/23/2026 12:07 PM 2026L003341

47. From approximately January 1966 to June 1966, Ernest Milligan worked as an Electrician for Fischback & Moore, Inc. in Seattle, Washington, where he was exposed to asbestos-containing products manufactured, sold, or distributed by the Product Defendants, including pumps, valves, packing, gaskets, insulation, boilers, motors, wires, cables, panels, and breakers.

48. From approximately April 1966 to April 1970, Ernest Milligan worked as an Electrician for Todd Shipyards Corporation in Seattle, Washington, where he was exposed to asbestos-containing products manufactured, sold, or distributed by the Product Defendants, including pumps, valves, packing, gaskets, insulation, boilers, motors, wires, cables, panels, and breakers.

49. From approximately April 1966 to May 1966, Ernest Milligan worked as an Electrician for LAKE UNION DRYDOCK COMPANY in Seattle, Washington, where he was exposed to asbestos-containing products manufactured, sold, or distributed by the Product Defendants, including pumps, valves, packing, gaskets, insulation, boilers, motors, wires, cables, panels, and breakers.

50. In approximately June 1966, Ernest Milligan worked as an Electrician for Northwest Electric Company in Seattle, Washington, where he was exposed to asbestos-containing products manufactured, sold, or distributed by the Product Defendants, including pumps, valves, packing, gaskets, insulation, boilers, motors, wires, cables, panels, and breakers.

51. From approximately July 1966 to July 1968, Ernest Milligan worked as an Electrician for Duwamish Shipyard Inc. in Seattle, Washington, where he was exposed to asbestos-containing products manufactured, sold, or distributed by the Product Defendants,

FILED DATE: 3/23/2026 12:07 PM 2026L003341

including pumps, valves, packing, gaskets, insulation, boilers, motors, wires, cables, panels, and breakers.

52. From approximately April 1967 to September 1967 and October 1973 to July 1977, Ernest Milligan worked as an Electrician at Babcock & Wilcox Company in Beaver Falls, Pennsylvania, where he was exposed to asbestos-containing products manufactured, sold, or distributed by the Product Defendants, including pumps, valves, packing, gaskets, insulation, boilers, motors, wires, cables, panels, and breakers.

53. From approximately October 1967 to December 1967, Ernest Milligan worked as an Electrician at Jones & Laughlin Steel Corporation in Aliquippa, Pennsylvania, where he was exposed to asbestos-containing products manufactured, sold, or distributed by the Product Defendants, including pumps, valves, packing, gaskets, insulation, boilers, motors, wires, cables, panels, and breakers.

54. From approximately April 1969 to July 1970, Ernest Milligan worked as an Electrician for Westinghouse Electric (PARAMOUNT GLOBAL/CBS CORPORATION) in Pennsylvania, where he was exposed to asbestos-containing products manufactured, sold, or distributed by the Product Defendants, including pumps, valves, packing, gaskets, insulation, boilers, motors, wires, cables, panels, and breakers.

55. From approximately July 1969 to December 1972, Ernest Milligan worked as a Gas Station Manager at Boron Oil Company (BP AMERICA INC.) in New Brighton, Pennsylvania, where he was exposed to asbestos-containing products manufactured, sold, or distributed by the Product Defendants, including engines, brakes, clutches, and gaskets.

56. From approximately January 1970 to June 1970 and January 1976 to March 1976, Ernest Milligan worked as a Mechanic at BACHMAN'S GARAGE, INC. in New Brighton,

FILED DATE: 3/23/2026 12:07 PM 2026L003341

Pennsylvania, where he was exposed to asbestos-containing products manufactured, sold, or distributed by the Product Defendants, including engines, brakes, clutches, and gaskets.

57. From approximately January 1978 to November 30, 1980, Ernest Milligan worked as an Electrician at Babcock & Wilcox Company, Inc. in Baberton, Ohio, where he was exposed to asbestos-containing products manufactured, sold, or distributed by the Product Defendants, including pumps, valves, packing, gaskets, insulation, boilers, motors, wires, cables, panels, and breakers.

58. Plaintiffs are not alleging asbestos exposure after November 30, 1980.

**COUNT I: NEGLIGENCE**
*(against Product Defendants)*

59. Plaintiffs reallege and incorporate all allegations contained in paragraphs 1 through 55 as if fully set forth herein.

60. Plaintiffs, BRENDA MILLIGAN, Individually and as the Personal Representative of the ESTATE OF ERNEST MILLIGAN, bring this action pursuant to 755 ILCS 5/27-6, commonly known as the Illinois Survival Act.

61. Defendants had a duty to exercise reasonable care and caution for the safety of those working with or around their asbestos-containing products, including Ernest Milligan.

62. Defendants knew or should have known that the asbestos fibers contained in their products had a toxic, poisonous, and highly deleterious effect upon the health of the person exposed to, ingesting, or otherwise absorbing said asbestos fibers.

63. Defendants failed to exercise ordinary care and caution for the safety of Ernest Milligan in one or more of the following acts or omissions:

FILED DATE: 3/23/2026 12:07 PM 2026L003341

a. Included asbestos in their products, even though it was foreseeable and could or should have been anticipated that persons such as Ernest Milligan, working with or around said products, would inhale, ingest, or otherwise absorb said asbestos fibers;

b. By poor manufacturing or by the nature of the products, formulae, or ingredients themselves, they failed to encapsulate, incarcerate, contain, or control the asbestos fibers within, making their products unreasonably likely to emit harmful amounts of renegade, loose, or friable asbestos during normal use, maintenance, installation, removal, or handling;

c. Included asbestos in their products when the Defendants knew or should have known that said asbestos fibers would have a toxic, poisonous, and highly deleterious effect upon the health of persons inhaling, ingesting, or otherwise absorbing said fibers;

d. Included asbestos in their products when adequate substitutes for the asbestos in them were available;

e. Failed to provide any or adequate warnings to persons working with or around the products of the dangers of inhaling, ingesting, or otherwise absorbing the asbestos fibers contained in them;

f. Failed to provide any adequate instructions concerning the safe methods of working with and around the products, including specific instructions on how to avoid inhaling, ingesting, or otherwise absorbing the asbestos fibers in them;

g. Failed to conduct tests on the asbestos-containing products manufactured, sold, delivered, or installed by the Defendants to determine the hazards to which workers

FILED DATE: 3/23/2026 12:07 PM 2026L003341

such as Ernest Milligan might be exposed while working with or around said products;

h. Marketed and distributed a product containing asbestos fibers;

i. Failed to provide instruction as to what appropriate apparel, if any, would be safe to wear while using or working in proximity to the Defendants' products;

j. Failed to develop alternative, non-asbestos-containing products in a timely manner;

k. Failed to inform users that asbestos-containing products caused asbestosis and cancer in laboratory animals and humans; and

l. Failed to provide safe packaging for their products.

64. At all relevant times, the Defendants' products were being used in the manner and for the purpose for which they were intended, and which was reasonably foreseeable to Defendants.

65. Ernest Milligan's exposure to, inhalation, ingestion, or absorption of said asbestos fibers emanating from Defendants' products was reasonably foreseeable and could or should have been known or anticipated by Defendants.

66. As a direct and proximate result of one or more of the foregoing acts or omissions on the part of the Defendants, individually and concurrently, Ernest Milligan was exposed to and inhaled, ingested, or otherwise absorbed asbestos fibers, causing him to develop mesothelioma, a fatal asbestos-caused cancer.

67. As a direct and proximate result of one or more of the foregoing acts or omissions on the part of the Defendants, individually and concurrently, Ernest Milligan suffered injuries of a personal and pecuniary nature, including but not limited to medical expenses, pain and suffering, disability, disfigurement, mental anguish, and death.

FILED DATE: 3/23/2026 12:07 PM 2026L003341

**WHEREFORE**, Plaintiffs, BRENDA MILLIGAN, Individually and as the Personal Representative of the ESTATE OF ERNEST MILLIGAN, respectfully request that this Honorable Court enter judgment against the Defendants in excess of thirty thousand dollars ($30,000.00), plus costs, and any other relief this Court deems just.

**COUNT II: NEGLIGENCE**
*(against Premises Defendants)*

68. Plaintiffs reallege and incorporate all allegations contained in paragraphs 1 through 55 as if fully set forth herein.

69. Plaintiffs, BRENDA MILLIGAN, Individually and as the Personal Representative of the ESTATE OF ERNEST MILLIGAN, bring this action pursuant to 755 ILCS 5/27-6, commonly known as the Illinois Survival Act.

70. At all relevant times, Defendants owned, managed, or controlled the premises where Ernest Milligan worked.

71. Defendants had a duty to exercise reasonable care and caution for the safety of their employees, including Ernest Milligan, who worked with or around asbestos-containing products.

72. Defendants knew or should have known that the asbestos-containing products on their premises had a toxic, poisonous, and highly deleterious effect upon the health of the person exposed to, ingesting, or otherwise absorbing said asbestos fibers.

73. Defendants failed to exercise ordinary care and caution for the safety of Ernest Milligan in one or more of the following acts or omissions:

a. Ordered, selected, or supplied asbestos-containing products for use on the premises, even though it was foreseeable and could or should have been anticipated that

FILED DATE: 3/23/2026 12:07 PM 2026L003341

employees, such as Ernest Milligan, would inhale, ingest, or otherwise absorb said asbestos fibers;

b. Ordered, selected, or supplied asbestos-containing products for use on the premises when adequate substitutes for the asbestos in them were available;

c. Failed to conduct tests on the asbestos-containing products ordered, selected, or supplied by Defendants to determine the hazards to which employees such as Ernest Milligan might be exposed while working with or around said products;

d. Failed to implement safety policies and procedures to protect employees, including Ernest Milligan, from inhaling, ingesting, or otherwise absorbing said asbestos fibers;

e. Failed to warn its employees, including Ernest Milligan, of the health hazards associated with working with asbestos-containing products on the premises and the dangers associated with inhaling, ingesting, or otherwise absorbing said asbestos fibers;

f. Failed to train its employees, including Ernest Milligan, on how to avoid or mitigate the health hazards associated with working with asbestos-containing products, on the premises and the dangers associated with inhaling, ingesting, or otherwise absorbing said asbestos fibers;

g. Failed to provide their employees, including Ernest Milligan, with breathing protection or other safety equipment to minimize employees' inhaling, ingesting, or otherwise absorbing said asbestos fibers;

h. Failed to conduct adequate air monitoring on the premises to detect hazardous levels of airborne asbestos fibers on the premises; and

FILED DATE: 3/23/2026 12:07 PM 2026L003341

i. Failed to implement adequate ventilation to reduce levels of airborne asbestos fibers on the premises.

74. At all relevant times, the asbestos-containing products on Defendants' premises were being used in the manner and for the purpose for which they were intended, and which was reasonably foreseeable to Defendants.

75. Ernest Milligan's exposure to, inhalation, ingestion, or absorption of said asbestos fibers emanating from asbestos-containing products present on Defendants' premises was reasonably foreseeable and could or should have been known or anticipated by Defendants.

76. As a direct and proximate result of one or more of the foregoing acts or omissions on the part of the Defendants, individually and concurrently, Ernest Milligan was exposed to and inhaled, ingested, or otherwise absorbed asbestos fibers, causing him to develop mesothelioma, a fatal asbestos-caused cancer.

77. As a direct and proximate result of one or more of the foregoing acts or omissions on the part of the Defendants, individually and concurrently, Ernest Milligan suffered injuries of a personal and pecuniary nature, including but not limited to medical expenses, pain and suffering, disability, disfigurement, mental anguish, and death.

**WHEREFORE**, Plaintiffs, BRENDA MILLIGAN, Individually and as the Personal Representative of the ESTATE OF ERNEST MILLIGAN, respectfully request that this Honorable Court enter judgment against the Defendants in excess of thirty thousand dollars ($30,000.00), plus costs, and any other relief this Court deems just.

## COUNT III: WILLFUL AND WANTON NEGLIGENCE
*(against Product Defendants)*

78. Plaintiffs reallege and incorporate all allegations contained in paragraphs 1 through 55 as if fully set forth herein.

FILED DATE: 3/23/2026 12:07 PM 2026L003341

79. Plaintiffs, BRENDA MILLIGAN, Individually and as the Personal Representative of the ESTATE OF ERNEST MILLIGAN, bring this action pursuant to 755 ILCS 5/27-6, commonly known as the Illinois Survival Act.

80. Defendants had a duty to exercise reasonable care and caution for the safety of those working with or around their asbestos-containing products, including Ernest Milligan.

81. Defendants had actual knowledge that the asbestos fibers contained in their products had a toxic, poisonous, and highly deleterious effect upon the health of the person exposed to, ingesting, or otherwise absorbing said asbestos fibers.

82. Defendants are guilty of one or more of the following acts or omissions amounting to willful and wanton misconduct:

a. Intentionally or with a conscious disregard for the safety of Ernest Milligan, included and continued to include asbestos in their products despite knowing that said asbestos fibers would have a toxic, poisonous, and highly deleterious effect upon the health of Ernest Milligan, who had no choice but to inhale, ingest, or otherwise absorb the fibers;

b. Intentionally or with a conscious disregard for the safety of Ernest Milligan, included asbestos in their products despite knowing of adequate, feasible, and commercially available substitutes for asbestos, making continued use of asbestos unnecessary for the function and performance of Defendants' products;

c. Intentionally or with a conscious disregard for the safety of Ernest Milligan, failed to provide any warnings to persons working with and around their asbestos-containing products regarding the dangers of inhaling, ingesting, or otherwise absorbing the asbestos fibers in them;

FILED DATE: 3/23/2026 12:07 PM 2026L003341

d. Intentionally or with a conscious disregard for the safety of Ernest Milligan, concealed the known dangers of inhaling, ingesting, or otherwise absorbing the asbestos fibers in their products;

e. Intentionally or with a conscious disregard for the safety of Ernest Milligan, failed to provide any instructions concerning the safe methods of working with and around the products, including specific instructions on how to avoid inhaling, ingesting, or otherwise absorbing the asbestos fibers in them;

f. Intentionally or with a conscious disregard for the safety of Ernest Milligan, failed to conduct tests on their asbestos-containing products to determine the extent of the hazards that workers such as Ernest Milligan faced when handling their products, despite having actual knowledge that such testing would confirm the deadly nature of their asbestos-containing products;

g. Intentionally or with a conscious disregard for the safety of Ernest Milligan, concealed and destroyed the results of internal testing of their asbestos-containing products that confirmed the health hazards of their asbestos-containing products to prevent Ernest Milligan and the general public from discovering said hazards;

h. Intentionally or with a conscious disregard for the safety of Ernest Milligan, marketed and distributed their asbestos-containing products as safe to promote sales and continued use despite actual knowledge that said products were deadly and posed an unreasonable risk of harm;

i. Intentionally or with a conscious disregard for the safety of Ernest Milligan, concealed complaints made by employees and workers regarding the health hazards associated with asbestos exposure to prevent Ernest Milligan and the general public

FILED DATE: 3/23/2026 12:07 PM 2026L003341

from discovering the true health hazards associated with their asbestos-containing products;

j. Intentionally or with a conscious disregard for the safety of Ernest Milligan, made a deliberate business decision to not develop non-asbestos-containing products, despite knowing the deadly risks of asbestos fibers and available alternatives to protect existing product lines and revenue streams; and

k. Intentionally or with a conscious disregard for the safety of Ernest Milligan, removed or omitted written warnings of known health hazards associated with asbestos on the packaging and labeling for their products, despite actual knowledge of said hazards to promote continued use and sale of their asbestos-containing products and to prevent workers from taking protective measures.

83. At all relevant times, Defendants' products were being used in the manner and for the purpose for which they were intended, and which was reasonably foreseeable to Defendants.

84. Ernest Milligan's exposure to, inhalation, ingestion, or absorption of said asbestos fibers emanating from Defendants' products was reasonably foreseeable and was known by Defendants.

85. As a direct and proximate result of one or more of the foregoing acts or omissions on the part of Defendants, individually and concurrently, Ernest Milligan was exposed to and inhaled, ingested, or otherwise absorbed asbestos fibers, causing him to develop mesothelioma, a fatal asbestos-caused cancer.

86. As a direct and proximate result of one or more of the foregoing acts or omissions on the part of Defendants, individually and concurrently, Ernest Milligan suffered injuries of a

FILED DATE: 3/23/2026 12:07 PM 2026L003341

personal and pecuniary nature, including but not limited to medical expenses, pain and suffering, disability, disfigurement, mental anguish, and death.

**WHEREFORE**, Plaintiffs, BRENDA MILLIGAN, Individually and as the Personal Representative of the ESTATE OF ERNEST MILLIGAN, respectfully request that this Honorable Court enter judgment against Defendants in excess of thirty thousand dollars ($30,000.00), plus costs and punitive damages, and any other relief this Court deems just.

**COUNT IV: WILLFUL AND WANTON NEGLIGENCE**
*(against Premises Defendants)*

87. Plaintiffs reallege and incorporate all allegations contained in paragraphs 1 through 55 as if fully set forth herein.

88. Plaintiffs, BRENDA MILLIGAN, Individually and as the Personal Representative of the ESTATE OF ERNEST MILLIGAN, bring this action pursuant to 755 ILCS 5/27-6, commonly known as the Illinois Survival Act.

89. At all relevant times, Defendants owned, managed, or controlled the premises where Ernest Milligan worked.

90. Defendants had a duty to exercise reasonable care and caution for the safety of employees, including Ernest Milligan, who worked with or around asbestos-containing products.

91. Defendants knew that the asbestos-containing products on their premises had a toxic, poisonous, and highly deleterious effect upon the health of the person exposed to, ingesting, or otherwise absorbing said asbestos fibers.

92. Defendants are guilty of one or more of the following acts or omissions amounting to willful and wanton misconduct:

a. Intentionally or with a conscious disregard for the safety of Ernest Milligan, ordered, selected, or supplied, and continued to order, select, and supply, asbestos-

containing products for use on the premises, despite actual knowledge that employees, such as Ernest Milligan, would inhale, ingest, or otherwise absorb said asbestos fibers and suffer serious injury or death as a result;

b. Intentionally or with a conscious disregard for the safety of Ernest Milligan, ordered, selected, or supplied asbestos-containing products for use on the premises, despite actual knowledge that adequate, feasible, and commercially available substitutes for asbestos existed, making the continued use of asbestos-containing products on the premises unnecessary;

c. Intentionally or with a conscious disregard for the safety of Ernest Milligan, failed to train its employees, including Ernest Milligan, on how to avoid or mitigate the health hazards associated with working with asbestos-containing products on the premises and the dangers associated with inhaling, ingesting, or otherwise absorbing said asbestos fibers despite actual knowledge of said health hazards and the availability of effective training measures to mitigate employee exposure;

d. Intentionally or with a conscious disregard for the safety of Ernest Milligan, failed to implement any safety policies, procedures, or protocols to protect employees, including Ernest Milligan, from inhaling, ingesting, or otherwise absorbing asbestos fibers on the premises, despite actual knowledge of the deadly hazards of asbestos exposure and the availability of effective safety measures;

e. Intentionally or with a conscious disregard for the safety of Ernest Milligan, failed to warn its employees, including Ernest Milligan, of the known health hazards associated with working with asbestos-containing products on the premises, despite

FILED DATE: 3/23/2026 12:07 PM 2026L003341

actual knowledge that said exposure caused serious injury, such as mesothelioma, and death;

f. Intentionally or with a conscious disregard for the safety of Ernest Milligan, failed to provide its employees, including Ernest Milligan, with breathing protection or other safety equipment to minimize employees' inhaling, ingesting, or otherwise absorbing said asbestos fibers despite actual knowledge of the availability of such equipment and the deadly hazards of asbestos exposure, to avoid the costs and operational disruptions associated with implementing adequate safety measures;

g. Intentionally or with a conscious disregard for the safety of Ernest Milligan, failed to conduct adequate air monitoring on the premises to detect and quantify hazardous levels of airborne asbestos fibers, despite actual knowledge that asbestos fiber levels on the premises posed a deadly risk to employees;

h. Intentionally or with a conscious disregard for the safety of Ernest Milligan, failed to implement adequate engineering controls, including ventilation systems sufficient to reduce airborne asbestos fiber levels on the premises to safe levels, despite actual knowledge that such controls were feasible, commercially available, and would have materially reduced employees' asbestos exposure, to avoid the costs and operational disruptions associated with implementing said controls;

i. Intentionally or with a conscious disregard for the safety of Ernest Milligan, actively concealed the known presence and dangers of asbestos-containing products on the premises from employees, including Ernest Milligan, to prevent employees from refusing to work in hazardous conditions or seeking medical attention or legal recourse.

93. At all relevant times, the asbestos-containing products on Defendants' premises were being used in the ordinary course of operations for which they were intended, which was reasonably foreseeable to Defendants.

94. Ernest Milligan's exposure to, inhalation, ingestion, or absorption of said asbestos fibers emanating from asbestos-containing products present on Defendants' premises was reasonably foreseeable and was known or anticipated by Defendants.

95. As a direct and proximate result of one or more of the foregoing acts or omissions on the part of Defendants, individually and concurrently, Ernest Milligan was exposed to and inhaled, ingested, or otherwise absorbed asbestos fibers, causing him to develop mesothelioma, a fatal asbestos-caused cancer.

96. As a direct and proximate result of one or more of the foregoing acts or omissions on the part of Defendants, individually and concurrently, Ernest Milligan suffered injuries of a personal and pecuniary nature, including but not limited to medical expenses, pain and suffering, disability, disfigurement, mental anguish, and death.

**WHEREFORE**, Plaintiffs, BRENDA MILLIGAN, Individually and as the Personal Representative of the ESTATE OF ERNEST MILLIGAN, respectfully request that this Honorable Court enter judgment against Defendants in excess of thirty thousand dollars ($30,000.00), plus costs and punitive damages, and any other relief this Court deems just.

## COUNT V: CONSPIRACY

*(against Metropolitan Life Insurance Company only)*

97. Plaintiffs reallege and incorporate all allegations contained in paragraphs 1 through 55 as if fully set forth herein.

98. Plaintiffs, BRENDA MILLIGAN, Individually and as the Personal Representative of the ESTATE OF ERNEST MILLIGAN, bring this action pursuant to 755 ILCS 5/27-6, commonly known as the Illinois Survival Act.

99. METROPOLITAN LIFE INSURANCE COMPANY, individually and as agents of one another and as co-conspirators, agreed and conspired among themselves and with other asbestos manufacturers, distributors, and trade organizations, to injure Ernest Milligan.

100. Beginning in the late 1920s, the conspirators: Johns-Manville, Raybestos-Manhattan, METROPOLITAN LIFE INSURANCE COMPANY, and others researched asbestos-related health problems and, as a result, undertook a duty to inform the consuming public about any health risks that could be associated therewith. In approximately 1929, the conspirator, METROPOLITAN LIFE INSURANCE COMPANY, through its agents and employees acting within the scope of their employment, notably Dr. Anthony J. Lanza, began an investigation of asbestos-related health hazards by studying asbestos mines in Canada and on the eastern seaboard of the United States. In 1935, this study was altered by Lanza, with the full knowledge of METROPOLITAN LIFE INSURANCE COMPANY, at the request of and in concert with the asbestos industry, and the conspirators named herein in order to wrongly influence the United States Public Health Service, the United States medical community, and various state legislatures, including the New Jersey Workers' Compensation Commission. At all times mentioned herein, METROPOLITAN LIFE INSURANCE COMPANY was the general medical, disability, and life insurance carrier, both occupational and non-occupational, for the conspirators Johns-Manville in the U.S. and Canada, and Raybestos-Manhattan, as well as others in the industry.

FILED DATE: 3/23/2026 12:07 PM 2026L003341

101. Dr. Lanza's omission of any citation to the significant English literature from his 1935 published report was a continuation of the policy of Metropolitan Life and its co-conspirators to misrepresent and suppress relevant information about the seriousness of asbestos-related disease, especially to asbestos industry employees and consumers of asbestos products.

102. The following conspirators were members of the trade association known as the Quebec Asbestos Mining Association (Q.A.M.A.): Johns-Manville Corporation, Carey Canada, individually and as successor to Quebec Asbestos Corporation, National Gypsum Company, and Turner & Newall, individually and as successor to Bell Asbestos. These conspirators, members of the Q.A.M.A., participated in the above-described material misrepresentations of the work of Dr. Leroy Gardner published by Dr. Arthur Vorwald in the AMA Archives of Industrial Health in 1951. Evidence of the Q.A.M.A.'s involvement in this misrepresentation arises from co-conspirator Johns-Manville's membership in the Q.A.M.A., as well as correspondence from co-conspirators dated 10/29/47, 11/26/47, 3/6/38, 10/15/48, 3/8/49, 3/21/51 and 9/6/50 and all indicating close monitoring of the editing process of Dr. Gardner's work by Q.A.M.A.'s representative Mr. Ivan Sabourin, acting on behalf of all Q.A.M.A. members, and also acting in close concert with the METROPOLITAN LIFE INSURANCE COMPANY and Dr. Anthony J. Lanza.

103. In addition to the above-described actions, the conspirators, through their agent, Dr. Anthony J. Lanza of the METROPOLITAN LIFE INSURANCE COMPANY, made a concerted effort to discredit and to terminate the studies and experiments of certain scientists who were developing data of profound importance for the area of public health

in relation to the lung cancer hazard which in fact did exist for workers and bystanders in the asbestos industry.

104. Because of the above-described actions of Dr. Lanza, METROPOLITAN LIFE INSURANCE COMPANY and the other co-conspirators, many other active scientists in the field of environmental cancer were driven out of their laboratories soon after describing their findings on cancer hazards of asbestos/industrial health origin. This included Dr. Gerrit Schepers, who had conducted inpatient studies in South Africa. (Lanza and Vandiver Brown suppressed the publication of Schepers' work while Schepers was affiliated with New York University. These efforts wrongfully obstructed and confused the real asbestos hazard situation and had a profound retarding effect on the evaluation of the truth in asbestos and asbestos-related health and cancer research.

105. In addition to all allegations above, the conspirators actively suppressed publications concerning mesothelioma in the *Asbestos Magazine*, an important source of information to the public, and also to users of asbestos products, including Ernest Milligan. This magazine was read by sales and marketing personnel in the asbestos industry.

106. The acts of Defendant conspirators, as described above, constitute a fraudulent misrepresentation/concealment which proximately caused injuries to Ernest Milligan in the following manner:

a. The material published or caused to be published by the conspirators was false and incomplete in that Defendants knowingly and deliberately deleted reference to the known health hazards of asbestos and asbestos-related products;

FILED DATE: 3/23/2026 12:07 PM 2026L003341

b. Defendants individually, as members of a conspiracy, and as agents of other co-conspirators, intended the publication of false and misleading reports, or the non-disclosure of documented reports on the health hazards of asbestos;

c. To maintain a favorable atmosphere for the continued sale, distribution, and use of asbestos and asbestos-related products;

d. To assist in the continued pecuniary gain of Defendants through the sale of asbestos products to an ignorant public;

e. To favor legislation to regulate asbestos exposures and limit medical and disability claims for compensation;

f. To provide a defense in lawsuits brought for injury resulting from asbestos disease;

g. To prevent relevant medical inquiries about asbestos disease;

h. To mislead the general public and Ernest Milligan about the hazards associated with asbestos products; and

i. To induce Ernest Milligan to use and continue to use asbestos products.

107. Ernest Milligan reasonably relied upon the published medical and scientific data documenting the purported safety of asbestos and asbestos-related products, and the absence of published medical and scientific reports on the hazards of asbestos and asbestos-related products, and therefore used asbestos because he believed it was safe.

108. Defendants individually, and as members of a conspiracy, and as agents of other co-conspirators, intended that Ernest Milligan rely upon the published reports regarding the safety of asbestos and asbestos-related products, and upon the absence of published medical and scientific data regarding the hazards of asbestos and asbestos-related products, to continue his exposure to those products.

FILED DATE: 3/23/2026 12:07 PM 2026L003341

109. Defendants individually, and as members of a conspiracy, and as agents of other co-conspirators, were in a position of superior knowledge regarding the health hazards of asbestos and therefore, Ernest Milligan and others deciding to use said asbestos-containing products to which Ernest Milligan was exposed had a right to rely on the published reports commissioned by Defendant regarding the health hazards of asbestos and the absence of published medical and scientific data regarding the hazards of asbestos and asbestos-related products.

110. As a direct and proximate result of METROPOLITAN LIFE INSURANCE COMPANY's intentional publication of deceptive and misleading medical data and information, as described in the preceding paragraphs, upon which data Ernest Milligan reasonably relied, Defendant caused asbestos or asbestos-containing products to be used by Ernest Milligan, who has inhaled or otherwise ingested hazardous asbestos dust resulting in injuries.

111. Additionally and alternatively, as a direct and proximate result of METROPOLITAN LIFE INSURANCE COMPANY's actions and omissions as described above, Ernest Milligan was caused to remain ignorant concerning the danger of human exposure to asbestos, resulting in damage to Ernest Milligan by depriving him and the general public of opportunities to be aware of the hazards of asbestos exposure, and thus the opportunity to take proper safety precautions and/or avoid exposure to asbestos dust. Because of this ignorance on the part of Ernest Milligan, METROPOLITAN LIFE INSURANCE COMPANY's failure to warn, METROPOLITAN LIFE INSURANCE COMPANY's concealment of the alteration of its published test results, and the actions and omissions and concerted design and conspiracy of METROPOLITAN LIFE INSURANCE COMPANY and others, all as described above, Ernest Milligan was occupationally

FILED DATE: 3/23/2026 12:07 PM 2026L003341

exposed to asbestos and/or asbestos-containing products used at his places of employment and has inhaled or otherwise ingested hazardous asbestos dust resulting in his developing mesothelioma.

112. As a direct and proximate result of one or more of the foregoing acts or omissions on the part of METROPOLITAN LIFE INSURANCE COMPANY, the aforesaid asbestos disease has disabled, disfigured, and caused the death of Ernest Milligan; Ernest Milligan was compelled to expend and become liable for large sums of monies for hospital, medical, and other health care services necessary for the treatment of his asbestos-induced disease and conditions, namely, mesothelioma; Ernest Milligan experienced great physical pain and mental anguish as a result of the inhalation, ingestion and absorption of said asbestos fibers; that as a further result of his asbestos-related disease and conditions, Ernest Milligan was hindered and prevented from pursuing his normal course of employment thereby losing large sums of money which otherwise would have accrued to him.

**WHEREFORE**, Plaintiffs, BRENDA MILLIGAN, Individually and as the Personal Representative of the ESTATE OF ERNEST MILLIGAN, respectfully request that this Honorable Court enter judgment against Defendants in excess of thirty thousand dollars ($30,000.00), plus costs and punitive damages, and any other relief this Court deems just.

**COUNT VI: LOSS OF CONSORTIUM**
*(against Product Defendants)*

113. Plaintiffs reallege and incorporate all allegations contained in paragraphs 1 through 55 as if fully set forth herein.

114. Defendants had a duty to exercise reasonable care and caution for the safety of those working with or around its asbestos-containing products, including Ernest Milligan.

FILED DATE: 3/23/2026 12:07 PM 2026L003341

115. Defendants knew or should have known that the asbestos fibers contained in their products had a toxic, poisonous, and highly deleterious effect upon the health of the person exposed to, ingesting, or otherwise absorbing said asbestos fibers.

116. Defendants failed to exercise ordinary care and caution for the safety of Ernest Milligan in one or more of the following acts or omissions:

a. Included asbestos in their products, even though it was foreseeable and could or should have been anticipated that persons such as Ernest Milligan, working with or around said products, would inhale, ingest, or otherwise absorb said asbestos fibers;

b. By poor manufacturing or by the nature of the products, formulae, or ingredients themselves, they failed to encapsulate, incarcerate, contain, or control the asbestos fibers within, making their products unreasonably likely to emit harmful amounts of renegade, loose, or friable asbestos during normal use, maintenance, installation, removal, or handling;

c. Included asbestos in their products when Defendants knew or should have known that said asbestos fibers would have a toxic, poisonous, and highly deleterious effect upon the health of persons inhaling, ingesting, or otherwise absorbing said fibers;

d. Included asbestos in their products when adequate substitutes for the asbestos in them were available;

e. Failed to provide any adequate warnings to persons working with or around the products of the dangers of inhaling, ingesting, or otherwise absorbing the asbestos fibers contained in them;

FILED DATE: 3/23/2026 12:07 PM 2026L003341

f. Failed to provide any adequate instructions concerning the safe methods of working with and around the products, including specific instructions on how to avoid inhaling, ingesting, or otherwise absorbing the asbestos fibers in them;

g. Failed to conduct tests on the asbestos-containing products manufactured, sold, or distributed by Defendants to determine the hazards to which workers such as Ernest Milligan might be exposed while working with or around said products;

h. Marketed and delivered products containing asbestos fibers;

i. Failed to provide instruction as to what appropriate apparel, if any, would be safe to wear while using or working in proximity to Defendants' products;

j. Failed to develop alternative, non-asbestos-containing products in a timely manner;

k. Failed to inform users that asbestos-containing products caused asbestosis and cancer in laboratory animals and humans; and

l. Failed to provide safe packaging for their products.

117. At all relevant times, Defendants' products were being used in the manner and for the purpose for which they were intended, and which was reasonably foreseeable to Defendants.

118. Ernest Milligan's exposure to, inhalation, ingestion, or absorption of said asbestos fibers emanating from Defendants' products was reasonably foreseeable and could or should have been known or anticipated by Defendants.

119. As a direct and proximate result of one or more of the foregoing acts or omissions on the part of the Defendants, individually and concurrently, Ernest Milligan was exposed to and inhaled, ingested, or otherwise absorbed asbestos fibers, causing him to develop mesothelioma, a fatal asbestos-caused cancer.

FILED DATE: 3/23/2026 12:07 PM 2026L003341

120. As a direct and proximate result of one or more of the foregoing acts or omissions of the Defendants, BRENDA MILLIGAN has been deprived of the companionship, comfort, society, support, and services of her husband, Ernest Milligan.

**WHEREFORE**, Plaintiffs, BRENDA MILLIGAN, Individually and as the Personal Representative of the ESTATE OF ERNEST MILLIGAN, respectfully request that this Honorable Court enter judgment against the Defendants in excess of thirty thousand dollars ($30,000.00), plus costs, and any other relief this Court deems just.

**COUNT VII: LOSS OF CONSORTIUM**
*(against Premises Defendants)*

121. Plaintiffs reallege and incorporate all allegations contained in paragraphs 1 through 55 as if fully set forth herein.

122. At all relevant times, Defendants owned, managed, or controlled the premises where Ernest Milligan worked.

123. Defendants had a duty to exercise reasonable care and caution for the safety of their employees, including Ernest Milligan, who worked with or around asbestos-containing products.

124. Defendants knew or should have known that the asbestos fibers contained in their products had a toxic, poisonous, and highly deleterious effect upon the health of the person exposed to, ingesting, or otherwise absorbing said asbestos fibers.

125. Defendants failed to exercise ordinary care and caution for the safety of Ernest Milligan in one or more of the following acts or omissions:

a. Ordered, selected, or supplied asbestos-containing products for use on the premises, even though it was foreseeable and could or should have been anticipated that

FILED DATE: 3/23/2026 12:07 PM 2026L003341

employees, such as Ernest Milligan, would inhale, ingest, or otherwise absorb said asbestos fibers;

b. Ordered, selected, or supplied asbestos-containing products for use on the premises when adequate substitutes for the asbestos in them were available;

c. Failed to conduct tests on the asbestos-containing products ordered, selected, or supplied by Defendants to determine the hazards to which employees such as Ernest Milligan might be exposed while working with or around said products;

d. Failed to implement safety policies and procedures to protect employees, including Ernest Milligan, from inhaling, ingesting, or otherwise absorbing said asbestos fibers;

e. Failed to warn its employees, including Ernest Milligan, of the health hazards associated with working with asbestos-containing products on the premises and the dangers associated with inhaling, ingesting, or otherwise absorbing said asbestos fibers;

f. Failed to train its employees, including Ernest Milligan, on how to avoid or mitigate the health hazards associated with working with asbestos-containing products on the premises and the dangers associated with inhaling, ingesting, or otherwise absorbing said asbestos fibers;

g. Failed to provide its employees, including Ernest Milligan, with breathing protection or other safety equipment to minimize employees' inhaling, ingesting, or otherwise absorbing said asbestos fibers;

h. Failed to conduct adequate air monitoring on the premises to detect hazardous levels of airborne asbestos fibers on the premises; and

FILED DATE: 3/23/2026 12:07 PM 2026L003341

i. Failed to implement adequate ventilation to reduce levels of airborne asbestos fibers on the premises.

126. At all relevant times, Defendants' products were being used in the manner and for the purpose for which they were intended, and which was reasonably foreseeable to Defendants.

127. Ernest Milligan's exposure to, inhalation, ingestion, or absorption of said asbestos fibers emanating from Defendants' products was reasonably foreseeable and could or should have been known or anticipated by Defendants.

128. As a direct and proximate result of one or more of the foregoing acts or omissions on the part of Defendants, individually and concurrently, Ernest Milligan was exposed to and inhaled, ingested, or otherwise absorbed asbestos fibers, causing him to develop mesothelioma, a fatal asbestos-caused cancer.

129. As a direct and proximate result of one or more of the foregoing acts or omissions of the Defendants, BRENDA MILLIGAN has been deprived of the companionship, comfort, society, support, and services of her husband, Ernest Milligan.

**WHEREFORE**, Plaintiffs, BRENDA MILLIGAN, Individually and as the Personal Representative of the ESTATE OF ERNEST MILLIGAN, respectfully request that this Honorable Court enter judgment against the Defendants in excess of thirty thousand dollars ($30,000.00), plus costs, and any other relief this Court deems just.

**COUNT VIII: WRONGFUL DEATH**
*(against Product Defendants)*

130. Plaintiffs reallege and incorporate all allegations contained in paragraphs 1 through 55 as if fully set forth herein.

FILED DATE: 3/23/2026 12:07 PM 2026L003341

131. BRENDA MILLIGAN, Individually and as the Personal Representative of the ESTATE OF ERNEST MILLIGAN, brings this action pursuant to 740 ILCS 180/1 *et seq*., commonly known as the Illinois Wrongful Death Act.

132. Defendants had a duty to exercise reasonable care and caution for the safety of those working with or around their asbestos-containing products, including Ernest Milligan.

133. Defendants knew or should have known that the asbestos fibers contained in their products had a toxic, poisonous, and highly deleterious effect upon the health of the person exposed to, ingesting, or otherwise absorbing said asbestos fibers.

134. Defendants failed to exercise ordinary care and caution for the safety of Ernest Milligan in one or more of the following acts or omissions:

a. Included asbestos in their products, even though it was foreseeable and could or should have been anticipated that persons such as Ernest Milligan, working with or around said products, would inhale, ingest, or otherwise absorb said asbestos fibers;

b. By poor manufacturing or by the nature of the products, formulae, or ingredients themselves, they failed to encapsulate, incarcerate, contain, or control the asbestos fibers within, making their products unreasonably likely to emit harmful amounts of renegade, loose, or friable asbestos during normal use, maintenance, installation, removal, or handling;

c. Included asbestos in their products when the Defendants knew or should have known that said asbestos fibers would have a toxic, poisonous, and highly deleterious effect upon the health of persons inhaling, ingesting, or otherwise absorbing said fibers;

FILED DATE: 3/23/2026 12:07 PM 2026L003341

d. Included asbestos in their products when adequate substitutes for the asbestos in them were available;

e. Failed to provide any or adequate warnings to persons working with or around the products of the dangers of inhaling, ingesting, or otherwise absorbing the asbestos fibers contained in them;

f. Failed to provide any adequate instructions concerning the safe methods of working with and around the products, including specific instructions on how to avoid inhaling, ingesting, or otherwise absorbing the asbestos fibers in them;

g. Failed to conduct tests on the asbestos-containing products manufactured, sold, delivered, or installed by the Defendants to determine the hazards to which workers such as Ernest Milligan might be exposed to while working with or around said products;

h. Marketed and distributed product containing asbestos fibers;

i. Failed to provide instruction as to what appropriate apparel, if any, would be safe to wear while using or working in proximity to the Defendants' products;

j. Failed to develop alternative, non-asbestos-containing products in a timely manner;

k. Failed to inform users that asbestos-containing products caused asbestosis and cancer in laboratory animals and humans; and

l. Failed to provide safe packaging for their products.

135. At all relevant times, Defendants' products were being used in the manner and for the purpose for which they were intended, and which was reasonably foreseeable to Defendants.

FILED DATE: 3/23/2026 12:07 PM 2026L003341

136. Ernest Milligan's exposure to, inhalation, ingestion, or absorption of said asbestos fibers emanating from Defendants' products, and eventual death from such products, was reasonably foreseeable and could or should have been known or anticipated by Defendants.

137. As a direct and proximate result of one or more of the foregoing acts or omissions on the part of the Defendants, individually and concurrently, Ernest Milligan was exposed to and inhaled, ingested, or otherwise absorbed asbestos fibers, causing him to develop mesothelioma, a fatal asbestos-caused cancer, which caused Ernest Milligan to sadly pass away.

138. Ernest Milligan's surviving spouse is BRENDA MILLIGAN, and his adult children are Roxan Lombardi, Candace Politi, and Tina Daugherty.

139. BRENDA MILLIGAN and the heirs of Ernest Milligan have incurred medical and funeral expenses and have suffered grief, sorrow, and mental suffering as a result of the wrongful death of Ernest Milligan.

**WHEREFORE**, Plaintiffs, BRENDA MILLIGAN, Individually and as the Personal Representative of the ESTATE OF ERNEST MILLIGAN, respectfully request that this Honorable Court enter judgment against the Defendants in excess of thirty thousand dollars ($30,000.00), plus costs, and any other relief this Court deems just.

**COUNT IX: WRONGFUL DEATH**
*(against Premises Defendants)*

140. Plaintiffs reallege and incorporate all allegations contained in paragraphs 1 through 55 as if fully set forth herein.

141. BRENDA MILLIGAN, Individually and as the Personal Representative of the ESTATE OF ERNEST MILLIGAN, brings this action pursuant to 740 ILCS 180/1 *et seq.*, commonly known as the Illinois Wrongful Death Act.

FILED DATE: 3/23/2026 12:07 PM 2026L003341

142. At all relevant times, Defendants owned, managed, or controlled the premises where Ernest Milligan worked.

143. Defendants had a duty to exercise reasonable care and caution for the safety of employees, including Ernest Milligan, who worked with or around asbestos-containing products.

144. Defendants knew or should have known that the asbestos fibers contained in their products had a toxic, poisonous, and highly deleterious effect upon the health of the person exposed to, ingesting, or otherwise absorbing said asbestos fibers.

145. Defendants failed to exercise ordinary care and caution for the safety of Ernest Milligan in one or more of the following acts or omissions:

a. Ordered, selected, or supplied asbestos-containing products for use on the premises, even though it was foreseeable and could or should have been anticipated that employees, such as Ernest Milligan, would inhale, ingest, or otherwise absorb said asbestos fibers;

b. Ordered, selected, or supplied asbestos-containing products for use on the premises when adequate substitutes for the asbestos in them were available;

c. Failed to conduct tests on the asbestos-containing products ordered, selected, or supplied by Defendants to determine the hazards to which employees such as Ernest Milligan might be exposed while working with or around said products;

d. Failed to implement safety policies and procedures to protect employees, including Ernest Milligan, from inhaling, ingesting, or otherwise absorbing said asbestos fibers;

e. Failed to warn its employees, including Ernest Milligan, of the health hazards associated with working with asbestos-containing products on the premises and the

FILED DATE: 3/23/2026 12:07 PM 2026L003341

dangers associated with inhaling, ingesting, or otherwise absorbing said asbestos fibers;

f. Failed to train its employees, including Ernest Milligan, on how to avoid or mitigate the health hazards associated with working with asbestos-containing products on the premises and the dangers associated with inhaling, ingesting, or otherwise absorbing said asbestos fibers;

g. Failed to provide its employees, including Ernest Milligan, with breathing protection or other safety equipment to minimize employees' inhaling, ingesting, or otherwise absorbing said asbestos fibers;

h. Failed to conduct adequate air monitoring on the premises to detect hazardous levels of airborne asbestos fibers on the premises; and

i. Failed to implement adequate ventilation to reduce levels of airborne asbestos fibers on the premises.

146. At all relevant times, Defendants' products were being used in the manner and for the purpose for which they were intended, and which was reasonably foreseeable to Defendants.

147. Ernest Milligan's exposure to, inhalation, ingestion, or absorption of said asbestos fibers emanating from Defendants' products, and eventual death from such products, was reasonably foreseeable and could or should have been known or anticipated by Defendants.

148. As a direct and proximate result of one or more of the foregoing acts or omissions on the part of Defendants, individually and concurrently, Ernest Milligan was exposed to and inhaled, ingested, or otherwise absorbed asbestos fibers, causing him to develop

FILED DATE: 3/23/2026 12:07 PM 2026L003341

mesothelioma, a fatal asbestos-caused cancer, which caused Ernest Milligan to sadly pass away.

149. Ernest Milligan's surviving spouse is BRENDA MILLIGAN, and his adult children are Roxan Lombardi, Candace Politi, and Tina Daugherty.

150. BRENDA MILLIGAN and the heirs of Ernest Milligan have incurred medical and funeral expenses and have suffered grief, sorrow, and mental suffering as a result of the wrongful death of Ernest Milligan.

**WHEREFORE**, Plaintiffs, BRENDA MILLIGAN, Individually and as the Personal Representative of the ESTATE OF ERNEST MILLIGAN, respectfully request that this Honorable Court enter judgment against the Defendants in excess of thirty thousand dollars ($30,000.00), plus costs, and any other relief this Court deems just.

Respectfully submitted,

**VINSON LAW P.A.**
*Attorneys for Plaintiffs*
5505 West Gray St, Tampa, FL 33609
Telephone: (813) 839-5708
Facsimile: (813) 831-5043
Melanie@vinsonlawoffice.com
Kaitlyn@vinsonlawoffice.com
HBellack@vinsonlawoffice.com

By: /s/ *Melanie K. Impastato*________
Melanie K. Impastato #6239412
Kaitlyn B. Harrison #6350556

FILED DATE: 3/23/2026 12:07 PM 2026L003341

# <u>EXHIBIT I</u>

## Summary of Certain Facts
## Ernest Milligan

FILED DATE: 3/23/2026 12:07 PM 2026L003341

## SUMMARY OF CERTAIN FACTS: ERNEST MILLIGAN

Asbestos Case: Mesothelioma
Social Security No.: XXX-XX-0239
Years of Asbestos Exposure: September 1960 to November 30, 1980

| | |
|---|---|
| PLAINTIFFS | BRENDA MILLIGAN, Individually and as the Personal Representative of the e ESTATE OF ERNEST MILLIGAN |
| DEFENDANTS | ABB INC., individually and as successor in interest to BAILEY METER COMPANY;<br>ABB MOTORS AND MECHANICAL, INC., f/k/a BALDOR ELECTRIC COMPANY;<br>AIR & LIQUID SYSTEMS CORPORATION, as successor by merger to BUFFALO PUMPS, INC.;<br>BACHMAN'S GARAGE INC.;<br>BP AMERICA INC., as successor to Standard Oil Company of Ohio d/b/a Boron;<br>BAYER CROPSCIENCE HOLDING, INC., individually and as successor in interest to AMCHEM PRODUCTS, INC. and BENJAMIN FOSTER COMPANY;<br>CLEAVER-BROOKS INC., f/k/a CLEAVER-BROOKS, a division of AQUA-CHEM INC.;<br>CROWN CORK & SEAL CO., INC., as successor-in-Interest to Mundet Cork;<br>EATON CORPORATION, individually and as successor in interest to CUTLER-HAMMER, INC.;<br>FLOWSERVE US, INC., as successor to ROCKWELL MANUFACTURING COMPANY, EDWARD VALVES, INC., NORDSTROM VALVES, INC. and SIER-BATH CO.;<br>FOSTER WHEELER ENERGY CORPORATION;<br>GENERAL DYNAMICS CORPORATION;<br>GENERAL ELECTRIC COMPANY;<br>GOULD ELECTRONICS INC., individually and as successor-in-interest to HOFFMAN VIDEO SYSTEMS, f/k/a NIKKO MATERIALS USA, INC. and f/k/a GOULD INC., successor-in-interest TO I-T-E IMPERIAL CORPORATION and I-T-E CIRCUIT BREAKER COMPANY, an Arizona corporation;<br>GOULDS PUMPS LLC;<br>GREENE, TWEED & CO., INC.;<br>IMO INDUSTRIES, LLC f/k/a IMO INDUSTRIES, INC., as successor in interest to DELAVAL STEAM TURBINE CO.;<br>JAMES WALKER MFG., CO.;<br>LAKE UNION DRYDOCK COMPANY;<br>METROPOLITAN LIFE INSURANCE COMPANY;<br>MILWAUKEE VALVE COMPANY, LLC; |

MORSE TEC LLC, f/k/a BORGWARNER MORSE TEC LLC, and successor-by-merger to BORG-WARNER CORPORATION;
OCCIDENTAL CHEMICAL CORPORATION, individually and as a successor-in-interest to Durez Corp.;
PARAMOUNT GLOBAL, f/k/a VIACOMCBS INC., f/k/a CBS CORPORATION, a Delaware Corporation, f/k/a VIACOM, INC., successor by merger to CBS CORPORATION, a Pennsylvania Corporation, f/k/a WESTINGHOUSE ELECTRIC CORPORATION, Individually and as successor-in-interest to BF STURTEVANT CO.;
PECW HOLDING COMPANY, f/k/a Plastics Engineering Company, a/k/a “PLENCO,” d/b/a “PLENCO,” f/k/a PLASTICS ENGINEERING COMPANY OF SHEBOYGAN;
PRYSMIAN CABLES AND SYSTEMS USA, LLC, a/k/a BICCGENERAL, successor by merger with GENERAL CABLE INDUSTRIES, INC., f/k/a GENERAL CABLE CORP.;
REDCO CORPORATION, f/k/a CRANE CO., individually and as successor in interest to DEMING PUMP CO., COCHRANE CORPORATION, CHAPMAN VALVE CO., SWARTWOUT CO., WEINMAN PUMP CO., and PACIFIC STEEL BOILER CORPORATION;
ROCKBESTOS-SURPRENANT CABLE CORP.;
ROCKWELL AUTOMATION, INC., as successor by merger to ALLEN-BRADLEY COMPANY, LLC, RELIANCE ELECTRIC CO., and ROSTONE CORPORATION, and its wholly owned subsidiary, NUAD Corporation (individually and as successor to Admiral Corporation), and as successor in interest to ROCKWELL SPRING & AXLE COMPANY’S TIMKEN SILENT AUTOMATIC DIVISION;
SCHNEIDER ELECTRIC USA, INC., f/k/a SQUARE D COMPANY;
STERLING WANDER LLLP f/k/a HONEYWELL INTERNATIONAL, INC., individually and as successor in interest to ALLIED SIGNAL, INC. / BENDIX CORP.;
UNION CARBIDE CORPORATION;
VIKING PUMP, INC.;
WARREN PUMPS LLC; and
WESTERN AUTO SUPPLY COMPANY;

| | |
|---|---|
| DATE OF BIRTH: | 12/18/1941 |
| PERSONAL HISTORY: | Married |

FILED DATE: 3/23/2026 12:07 PM 2026L003341

| | |
|---|---|
| ASBESTOS EXPOSURE: | Ernest Milligan was exposed to asbestos on a daily and regular basis from September 1960 to November 30, 1980 as a Seaman's Recruit, an Electrician's Mate Fireman's Apprentice, an Electrician's Mate Fireman, an Electrician's Mate Petty Officer 3rd Class, an Electrician's Mate Petty Officer 2nd Class, an Electrician, a Mechanic, and as a Manager by working on or around others working on asbestos-containing gaskets, packing, insulation, pumps, valves, boilers, electrical equipment, engines, brakes, and other miscellaneous machinery. Ernest Milligan, as well as others in his vicinity, routinely, and according to their job duties, performed these tasks. Further, these processes often included sweeping up after each job, creating asbestos dust that Ernest Milligan regularly and frequently inhaled. |

FILED DATE: 3/23/2026 12:07 PM 2026L003341

# EXHIBIT II

## Exposure History
## Ernest Milligan

FILED DATE: 3/23/2026 12:07 PM 2026L003341

# EXPOSURE HISTORY FOR ERNEST MILLIGAN

Ernest Milligan was exposed to asbestos during his military service as an Electrician's Mate, and he was exposed to asbestos during his civilian work as an Electrician, a Mechanic, and as a Gas Station Manager from September 1960 to November 30, 1980. He was exposed on a regular, frequent, and continuous basis to various asbestos products at numerous job sites. Ernest Milligan and his co-workers, or members of other trades working in close proximity to him, cut, mixed, sawed, and pounded various asbestos products, causing massive amounts of asbestos dust to come in contact with Ernest Milligan's hands, mouth, nose, and clothing. In this manner, Ernest Milligan encountered numerous types of asbestos products being applied by him, his co-workers, and members of other trades. Due to the aforementioned activities, Ernest Milligan could not help but breathe in the asbestos dust produced from these products while he worked with or in close proximity to others during his work as an Electrician's Mate, Electrician, a Mechanic, and as a Gas Station Manager.

**1.0 Job Sites Where Ernest Milligan was Exposed to Various Asbestos Products:** Ernest Milligan was continuously and regularly exposed to various asbestos products listed below in section 2.0 from September 1960 through November 30, 1980. These job sites include, but are not limited to the following:

| **Employer** | **Time Period** |
|---|---|
| Electrician's Mate "A" School | September 1960 – November 1960 |
| USS *Burton Island* (AGB-1) | November 1960 – April 1964 |
| Salmon Bay Electric Co. | April 1964 – December 1964 |
| Lockheed Shipbuilding Company | January 1965 – July 1966 |
| Fischback & Moore | January 1966 – June 1966 |
| Todd Shipyards Corp | April 1966 – April 1970 |
| LAKE UNION DRYDOCK COMPANY | April 1966 – May 1966 |
| Northwest Electric Company | June 1966 |
| Duwamish Shipyard Inc. | July 1966 – July 1968 |
| Babcock & Wilcox Company | April 1967 – September 1967 and<br>October 1973 – July 1977 |
| Jones & Laughlin Steel Corporation | October 1967 – December 1967<br><br>April 1969 – July 1970 |

| | |
|---|---|
| Westinghouse Electric (PARAMOUNT GLOBAL/CBS CORPORATION)<br><br>Boron Oil Company (BP AMERICA INC.)<br><br>BACHMAN'S GARAGE, INC.<br><br><br>Babcock & Wilcox Company | <br>July 1969 – December 1972<br><br>January 1970 – June 1970 and;<br>January 1976 – March 1976<br><br>January 1978 – November 30, 1980 |

**2.0 Various Asbestos Products to Which Ernest Milligan was Exposed:** The following asbestos-containing products were in widespread use at various job sites listed above in Section 1.0. Ernest Milligan was continuously and regularly exposed to asbestos as an Electrician's Mate from July 1960 through April 1964. Ernest Milligan was also continuously and regularly exposed to asbestos as an Electrician, Mechanic, and Gas Station Manager from 1964 through November 30, 1980.

| **Defendant** | **Asbestos Products** |
|---|---|
| ABB INC., individually and as successor in interest to BAILEY METER COMPANY | Valves, electrical equipment |
| ABB MOTORS AND MECHANICAL, INC., f/k/a BALDOR ELECTRIC COMPANY | Motors |
| AIR & LIQUID SYSTEMS CORPORATION, as successor by merger to BUFFALO PUMPS, INC. | Pumps |
| BACHMAN'S GARAGE INC. | Premises Defendant |
| BP AMERICA INC., as successor to Standard Oil Company of Ohio d/b/a Boron | Premises Defendant |
| BAYER CROPSCIENCE HOLDING, INC., individually and as successor in interest to AMCHEM PRODUCTS, INC. and BENJAMIN FOSTER COMPANY | Adhesive cement, paint |
| CLEAVER-BROOKS INC., f/k/a CLEAVER-BROOKS, a division of AQUA-CHEM INC. | Boilers |
| CROWN CORK & SEAL CO., INC., as successor-in-Interest to Mundet Cork | Insulation |
| EATON CORPORATION, individually and as successor in interest to CUTLER-HAMMER, INC. | Electrical equipment |
| FLOWSERVE US, INC., as successor to ROCKWELL MANUFACTURING COMPANY, EDWARD VALVES, INC., NORDSTROM VALVES, INC. and SIER-BATH CO. | Valves |

FILED DATE: 3/23/2026 12:07 PM 2026L003341

| | |
|---|---|
| FOSTER WHEELER ENERGY CORPORATION | Generators |
| GENERAL DYNAMICS CORPORATION | Motors, winches, electrical equipment |
| GENERAL ELECTRIC COMPANY | Motors, phenolics, electrical equipment |
| GOULD ELECTRONICS INC., individually and as successor-in-interest to HOFFMAN VIDEO SYSTEMS, f/k/a NIKKO MATERIALS USA, INC. and f/k/a GOULD INC., successor-in-interest TO I-T-E IMPERIAL CORPORATION and I-T-E CIRCUIT BREAKER COMPANY, an Arizona corporation | Electrical equipment |
| GOULDS PUMPS LLC | Pumps |
| GREENE, TWEED & CO., INC. | Packing, gaskets |
| IMO INDUSTRIES, LLC f/k/a IMO INDUSTRIES, INC., as successor in interest to DELAVAL STEAM TURBINE CO. | Pumps, turbines |
| JAMES WALKER MFG., CO. | Packing, gaskets |
| LAKE UNION DRYDOCK COMPANY | Premises Defendant |
| METROPOLITAN LIFE INSURANCE COMPANY | Conspiracy Defendant |
| MILWAUKEE VALVE COMPANY, LLC | Valves |
| MORSE TEC LLC, f/k/a BORGWARNER MORSE TEC LLC, and successor-by-merger to BORG-WARNER CORPORATION | Clutches |
| OCCIDENTAL CHEMICAL CORPORATION, individually and as a successor-in-interest to Durez Corp. | Phenolics, electrical equipment |
| PARAMOUNT GLOBAL, f/k/a VIACOMCBS INC., f/k/a CBS CORPORATION, a Delaware Corporation, f/k/a VIACOM, INC., successor by merger to CBS CORPORATION, a Pennsylvania Corporation, f/k/a WESTINGHOUSE ELECTRIC CORPORATION, Individually and as successor-in-interest to BF STURTEVANT CO. | Forced draft blowers, motors, generators, phenolics, electrical equipment & Premises Defendant |
| PECW HOLDING COMPANY, f/k/a Plastics Engineering Company, a/k/a "PLENCO," d/b/a "PLENCO," f/k/a PLASTICS ENGINEERING COMPANY OF SHEBOYGAN | Phenolics, electrical equipment |
| PRYSMIAN CABLES AND SYSTEMS USA, LLC, a/k/a BICCGENERAL, successor by merger with GENERAL CABLE | Cable, electrical equipment |

FILED DATE: 3/23/2026 12:07 PM 2026L003341

| | |
|---|---|
| INDUSTRIES, INC., f/k/a GENERAL CABLE CORP. | |
| REDCO CORPORATION, f/k/a CRANE CO., individually and as successor in interest to DEMING PUMP CO., COCHRANE CORPORATION, CHAPMAN VALVE CO., SWARTWOUT CO., WEINMAN PUMP CO., and PACIFIC STEEL BOILER CORPORATION | Pumps, valves, gaskets |
| ROCKBESTOS-SURPRENANT CABLE CORP. | Cable, electrical equipment |
| ROCKWELL AUTOMATION, INC., as successor by merger to ALLEN-BRADLEY COMPANY, LLC, RELIANCE ELECTRIC CO., and ROSTONE CORPORATION, and its wholly owned subsidiary, NUAD Corporation (individually and as successor to Admiral Corporation), and as successor in interest to ROCKWELL SPRING & AXLE COMPANY'S TIMKEN SILENT AUTOMATIC DIVISION | Phenolics, electrical equipment |
| SCHNEIDER ELECTRIC USA, INC., f/k/a SQUARE D COMPANY | Electrical equipment |
| STERLING WANDER LLLP f/k/a HONEYWELL INTERNATIONAL, INC., individually and as successor in interest to ALLIED SIGNAL, INC. / BENDIX CORP. | Brakes |
| UNION CARBIDE CORPORATION | Phenolics, electrical equipment |
| VIKING PUMP, INC. | Pumps |
| WARREN PUMPS LLC | Pumps |
| WESTERN AUTO SUPPLY COMPANY | Brakes |